# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
   **Plaintiff,**

  v.                  Case No. 11-CR-72

**CVIJAN SKILJEVIC**
   **Defendant.**

## DECISION AND ORDER

The government charged defendant Cvijan Skiljevic with procuring contrary to law his naturalization as a United States citizen, 18 U.S.C. § 1425(a), and making a false statement under oath in a matter relating to naturalization and citizenship, 18 U.S.C. § 1015(a).[1] The government alleges that defendant lied about his military service in the Army of the Republika Srpska ("VRS") and his place of residence during the Bosnian-Serbian war in the former Yugoslavia in the 1990's, and falsely claimed to have been detained by Bosnian Muslim soldiers between June 1992 and April 1993. The case is currently set for trial on August 19, 2013. Defendant has filed or renewed various pre-trial motions, which I address below.

## I. RULE 404(b) EVIDENCE

Defendant moves for pre-trial notice of other acts evidence the government intends to use at trial. The government agrees to provide such notice by July 29, 2013. Defendant indicates in reply that this is acceptable. This motion will therefore be denied as moot.

---

[1]His wife, Nedeljka Skiljevic, is charged with the same two crimes in separate counts.

## II.  EARLY DISCOVERY CONCERNING EXPERTS

Defendant next moves for expert witness disclosure 60 days in advance of trial.  The government indicates that it has already provided partial disclosure and will supplement 30 days before trial.  In reply, defendant accepts disclosure 30 days before trial.  Thus, this motion will also be denied as moot.

## III.  MOTION TO SEVER

Defendant moves to sever his trial from his wife's.  The government agrees that severance is appropriate.  Therefore, I will grant this motion.  The government proposes to try defendant first on the current August 19, 2013 trial date.  I will hold a status with counsel to discuss scheduling.[2]

## IV.  MOTION TO RECONSIDER DENIAL OF MOTION TO SUPPRESS

I previously denied defendant's motion to suppress evidence obtained following the stop of his vehicle, concluding that the agents had probable cause.  (R. 90 at 5-8.)  In the alternative, I concluded that the stop could be justified under Michigan v. Summers, 452 U.S. 692, 704-05 (1981), as the agents had a warrant to search defendant's home and stopped him a short distance away. I noted that the Supreme Court had recently granted certiorari in United States v. Bailey, 652 F.3d 197 (2d Cir. 2011), cert. granted, 132 S. Ct. 2710 (2012), to address the legality under Summers of stops conducted away from the scene of the search.  However, I noted that even if the Court later decided that Summers did not apply when the individual left the immediate vicinity of the premises before the warrant was executed, defendant's stop was nevertheless supported by probable cause.  (R. 90 at 8 n.8.)

---

[2]One of the grounds for severance is defendant's desire to call his wife as a witness; however, if he is tried first she will likely be unavailable.  (See R. 113.)

2

Seizing on the Supreme Court's reversal of the Second Circuit in Bailey, 133 S. Ct. 1031 (2013), defendant asks me to reconsider my ruling. However, in his motion defendant fails to acknowledge my previous conclusion that reversal in Bailey would not change the outcome here.

In his reply, defendant asserts that, but for the search warrant that was to be executed at his home, the agents would not have had any basis to assert probable cause for his arrest. It was not the search warrant itself that provided probable cause for the stop but rather the information the agents had obtained, which was set forth in the warrant application; nothing the agents obtained later, after entering the home, contributed to the probable cause showing for the stop.

Defendant further asserts that the agents should have obtained an arrest warrant if they intended to arrest him at his home. The agents did not arrest defendant inside his home, and as I noted in my previous decision, "in the area of arrests made in a public place, an arrest warrant has never been considered to be constitutionally mandated even when there was opportunity for one to be obtained." United States v. Fernandez-Guzman, 577 F.2d 1093, 1097 (7th Cir. 1978).

Finally, defendant contends that there was no probable cause for his arrest in a public place, as the agents did not allege that he committed any crimes or traffic infractions in their presence. The Fourth Amendment does not require that an officer personally witness a crime in order to acquire obtain probable cause for a warrantless arrest. See, e.g., Nelson v. Village of Lisle, Ill., 437 Fed. Appx. 490, 493 (7th Cir. 2011) (citing Brooks v. City of Aurora, 653 F.3d 478, 484-86 (7th Cir. 2011); Stokes v. Board of Education of City of Chicago, 599 F.3d 617, 622 (7th Cir. 2010); McBride v. Grice, 576 F.3d 703, 707 (7th Cir. 2009)), cert. denied, 132 S.

3

Ct. 1543 (2012); see also Woods v. City of Chicago, 234 F.3d 979, 995 (7th Cir. 2000) (collecting cases rejecting the notion that the common law "in the presence" rule is part of the Fourth Amendment). I therefore decline to revisit my previous decision.

## V.  MOTION IN LIMINE REGARDING EVIDENCE OF GENOCIDE

Defendant moves in limine to exclude evidence or testimony regarding genocide or ethic cleansing during the Bosnian-Serbian war. He contends that there is no evidence that he personally committed such atrocities, and that this evidence would be irrelevant and unfairly prejudicial. Defendant concedes that evidence of his military service would be relevant, but nothing more. The government responds that while it does not intend to elicit a detailed account of the atrocities in its case-in-chief, evidence of defendant's military service during the Bosnian-Serbian war – and more specifically his unit's participation in the assault on Srebrenika[3] – constitutes direct evidence of his lies, establishes the materiality of his misrepresentations and omissions, and is also directly relevant to his knowledge, motive, and intent. The government further proposes a cautionary instruction regarding the permissible use of this evidence by the jury.

In order to obtain a conviction in this case, the government must prove that defendant knowingly made materially false statements during the naturalization process. See United States v. Latchin, 554 F.3d 709, 712-13 (7th Cir. 2009) (citing Kungys v. United States, 485

---

[3]"In July 1995, Bosnian Serb military forces commenced an assault on the municipality of Srebrenica, home to thousands of Muslims, an area that had been declared a United Nations 'safe zone.' Thousands of Muslim men surrendered to Serb forces during the offensive but rather than being treated as prisoners of war most were summarily executed. Many were buried in mass graves." United States v. Ikonic, No. 06-CR-340, 2009 WL 497129, at *2 (E.D. Wis. Feb. 26, 2009). These events "have been internationally recognized as a genocide." Id.

U.S. 759 (1988)). The government indicates that it intends to introduce military records obtained during a search of the headquarters of the Zvornik Brigade, which identify defendant as a rifleman, in order to demonstrate that defendant lied about his military service. The government further indicates that it intends to present testimony from immigration personnel that defendant's failure to disclose his service in this particular Brigade, which allegedly engaged in wartime atrocities against a rival religious/ethic group, was material to the adjudication of defendant's applications for refugee status, adjustment to permanent resident status, and, ultimately, citizenship. See, e.g., Negusie v. Holder, 555 U.S. 511, 514 (2009) (discussing the so-called "persecutor bar" to admission to the United States). Absent some explanation of the Zvornik Brigade's role in the war, the jury will be unable to determine why defendant's failure to disclose this service may have influenced the naturalization process. Further, evidence of defendant's service in the Zvornik Brigade and that unit's role in the war is directly relevant to defendant's motive and intent in failing to disclose his service in the VRS. The government alleges that defendant provided a false story about being captured by Bosnian Muslim soldiers and held in a labor camp during the time he was actually serving in the Zvornik Brigade in Bosnia. The government argues that this evidence tends to show that defendant's misrepresentations were not innocent mistakes but rather knowing falsehoods motivated by his concern that immigration officials, apprised of his service in the Zvornik Brigade, would not have admitted him.[4]

---

[4] In his reply, defendant argues that, absent evidence that he personally participated in acts of persecution, any further inquiry by immigration officials would have ended quickly had he disclosed his military service. A statement is material if it has a natural tendency to influence, or was capable of influencing, the decision of the person to whom it was addressed. Kungys, 485 U.S. at 770; see also id. at 772 (stating that the test is whether the representation or concealment had a natural tendency to produce the conclusion that the applicant was

5

For these reasons, the evidence appears relevant. Properly limited in scope, and accompanied by an appropriate cautionary instruction, the risk of unfair prejudice can be avoided. See United States v. Chavis, 429 F.3d 662, 668 (7th Cir. 2005) ("Evidence is unfairly prejudicial only to the extent that it will cause the jury to decide the case on improper grounds."). However, I will further discuss this issue with the parties at the upcoming status. See United States v. Roux, 715 F.3d 1019, 1026 (7th Cir. 2013) (indicating that courts have a variety of tools at their disposal to address the prejudicial effects of evidence, including reserving ruling on the admission of the evidence until trial when the relevance and ramifications of the evidence may be more concretely assessed, placing limits on the extent and detail of the evidence, and giving stronger and more focused limiting instructions).

## VI. MOTION IN LIMINE REGARDING FOREIGN DOCUMENTS

Defendant next moves to exclude documents obtained from the International Criminal Tribunal for the Former Yugoslavia ("ICTY") or other foreign sources (e.g., military rosters), arguing that they are hearsay and that the government cannot properly authenticate them. Defendant further argues that, under the "best evidence" rule, the government should not be permitted to introduce copies. Finally, defendant contends that introduction of the documents would violate his Confrontation Clause rights.

Federal Rule of Evidence 901(a) requires a party seeking to admit an item into evidence at trial to "produce evidence sufficient to support a finding that the item is what the proponent

---

qualified); id. at 774 (Opinion of Scalia, J.) (considering whether the facts themselves were relevant to the applicant's qualifications for citizenship, and whether disclosure would have predictably led to the discovery of other facts relevant to his qualifications). I cannot, based on the current state of the record, determine that non-disclosure of military service would be material only if defendant personally participated in persecution. Further, defendant offers no response to the government's motive/intent argument.

6

claims it is." The Rule "'does not erect a particularly high hurdle.'" Thanongsinh v. Bd. of Educ., 462 F.3d 762, 779 (7th Cir. 2006) (quoting United States v. Dhinsa, 243 F.3d 635, 658 (2d Cir. 2001)). Rule 901(b) provides a non-exhaustive list of examples of evidence that may satisfy the authentication requirement, including testimony of a witness with knowledge that the item is what it is claimed to be, Fed. R. Evid. 901(b)(1), evidence that the item bears distinctive characteristics, Fed. R. Evid. 901(b)(4), and evidence that a document was recorded or filed in a public office as authorized by law, Fed. R. Evid. 901(b)(7).

The government indicates that all of the ICTY documents it intends to offer at trial have been certified by the ICTY as official records gathered, stored, and maintained by the ICTY. The government further indicates that it intends to authenticate the records through the testimony of Richard Butler, who was personally involved in the retrieval of documents from the Zvornik Brigade Headquarters and has worked extensively with the ICTY. According to the government, Butler will describe how the documents were seized, how they were secured and transported to the ICTY, and how he participated in cataloguing the documents. Butler will also testify that he and other expert witnesses and historians have examined and relied upon these documents in ICTY proceedings against members of the VRS.

Courts have held that such testimony is sufficient to authenticate records. See, e.g., United States v. Vidacak, 553 F.3d 344, 349 (4th Cir. 2009) ("Richard Butler's testimony was independently sufficient to support a prima facie case that the military documents were authentic Zvornik Brigade records.");[5] United States v. Pantic, 308 Fed. Appx. 731, 733 (4th

---

[5]In his reply, defendant argues that the Vidacak court did not inquire as to when and where the documents were created, or what happened to them prior to coming into the ICTY's possession. The court did address this issue, stating that "the burden of authentication is not as demanding as suggested by Vidacak – a proponent need not establish a perfect chain of

7

Cir. 2009) ("Richard Butler's testimony was independently sufficient to establish a prima facie case that the military documents revealed Pantic's participation in the VRS during the Bosnian Civil War."); see also United States v. Dumeisi, 424 F.3d 566, 574-75 (7th Cir. 2005) (finding that Iraqi intelligence documents were properly authenticated by a "witness with knowledge" who had worked with the Iraqi Intelligence Service).

Courts have further held that such records "fall within the hearsay exception of Fed. R. Evid. 803(8) in that they constitute '[r]ecords, reports, statements, or data compilations, in any form, of public offices of agencies, setting forth (A) the activities of the office or agency . . . .'" Vidacak, 553 F.3d at 351 (citing United States v. Demjanjuk, 367 F.3d 623, 631 (6th Cir. 2004) (Nazi German Service Identity Card); United States v. Garland, 991 F.2d 328, 334-35 (6th Cir. 1993) (Ghanian judgment); United States v. Grady, 544 F.2d 598, 604 (2d Cir. 1976) (Northern Ireland constabulary firearms report)).[6]

As to the best evidence issue, Federal Rule of Evidence 1003 allows the admission of duplicates "to the same extent as the original unless a genuine question is raised about the

---

custody or documentary evidence to support their admissibility." Id. at 350. The court further noted that "the prima facie showing may be accomplished largely by offering circumstantial evidence that the documents in question are what they purport to be." Id. Defendant's argument on this point goes to weight, not admissibility.

[6]Defendant argues in reply that this exception should not apply because these are not (originally) ICTY records but rather Serbian records, and the government will present no Serbian official to authenticate them. However, as the Vidacak court noted, "No foundational testimony is required in order to admit evidence under Rule 803(8)." Id. at 351. The court further noted that "Butler's testimony not only supported the records' authenticity, but also reinforced their qualification under the hearsay exception. . . . Butler attested to how these documents were seized from the Zvornik Brigade headquarters, where documents of this sort were expected to be found. Butler also explained how the VRS maintained and organized such records in accordance with the procedures it adopted from the JNA. Finally, the records on their face reflect that they were created by the VRS to memorialize its activities." Id. I assume that Butler will provide similar testimony in this case.

8

original's authenticity or the circumstances make it unfair to admit the duplicate." Defendant presents only speculation that the documents in this case are fraudulent.[7]

Finally, defendant fails to show that these documents are "testimonial" under the Sixth Amendment's Confrontation Clause. See Melendez-Diaz v. Massachusetts, 557 U.S. 305, 324 (2009) ("Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because – having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial – they are not testimonial.").

## VII. MOTION IN LIMINE REGARDING TRANSLATED DOCUMENTS

Defendant next argues that, unless the government produces the person who translated between Serbian and English when he completed his immigration applications, his statements in these applications cannot be admitted. Specifically, he contends that such statements are hearsay and would violate his Confrontation Clause rights unless the interpreter is present and subject to cross-examination.

Offered by the government, defendant's own statements are not hearsay.[8] Fed. R. Evid. 801(d)(2). The government may also introduce defendant's statements under Rule 801(c), as they are offered not for their truth but rather to show that defendant made them "so as to establish a foundation for later showing, through other admissible evidence, that they were

---

[7]In his reply, he asserts that courts have been faced with the issue of altered or forged documents, often by Bosnian Muslims, in an attempt to convict Serbs following the civil war. However, he presents no evidence of this in his case.

[8]Defendant argues in reply that the English statements or responses are not his statements, only the original Serbian words are. However, he offers no evidence that the translations do not track his words.

9

false." Anderson v. United States, 417 U.S. 211, 220 (1974); see also Vidacak, 553 F.3d at 352-53 ("Finally, we hold that Vidacak's statements to Officer Tierney were not hearsay for two independent reasons: (1) they qualified as party admissions under Fed. R. Evid. 801(d)(2); and (2) they were not offered 'to prove the truth of the matter asserted.' Fed.R.Evid. 801(c). Indeed, the statements that Officer Tierney testified Vidacak made through the interpreter were offered for the falsity of the matter asserted – in other words, they were introduced to show that Vidacak had lied during his application interview.").

The use of an interpreter does not, absent evidence of unreliability or motive to mislead, make an otherwise admissible statement inadmissible. See Germano v. International Profit Ass'n, Inc., 544 F.3d 798, 802-03 (7th Cir. 2008) (collecting cases). In deciding whether to depart from this general rule, courts consider which party supplied the interpreter, whether the interpreter had any motive to mislead or distort, the interpreter's qualifications and language skill, and whether actions taken subsequent to the conversation were consistent with the statements as translated. Id. at 803. In this case, as in Vidacak, it appears that the interpreters who assisted defendant were employed by an independent, United Nations funded entity, and defendant presents no evidence that the interpreters had any reason to be biased against him or that they lacked necessary skills. Further, defendant later admitted to law enforcement agents that he intentionally failed to disclose his military service with the VRS because he was concerned his application would be denied; he also admitted that he understood the questions. Thus, the record contains no basis for questioning the interpretation.[9]

---

[9]Defendant notes in reply that mistakes in translation can happen and argues that he must be afforded a chance to challenge the interpreter at trial. However, he does not even

Finally, defendant presents no authority for applying the Confrontation Clause to his own translated statements. See, e.g., United States v. Romo-Chavez, 681 F.3d 955, 961 (9th Cir. 2012) (holding that the defendant's confrontation rights were not implicated by admission of his own translated statements), cert. denied, 133 S. Ct. 995 (2013). Nor does he establish that the statements are testimonial, see, e.g., United States v. Phoeun Lang, 672 F.3d 17, 24-25 (1st Cir.) (holding that immigration forms are not testimonial), cert. denied, 132 S. Ct. 2730 (2012), or, if not offered for the truth, subject to the Confrontation Clause, see, e.g., United States v. Foster, 701 F.3d 1142, 1150 (7th Cir. 2012) ("[T]he Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.") (internal quote marks omitted).[10]

### VIII. MOTION TO RECONSIDER SELECTIVE PROSECUTION

Finally, defendant asks me to reconsider the denial of his previous selective prosecution motion. I denied that motion based on defendant's failure to present evidence that similarly situated Bosnian Muslims sought admission to the United States, lied on their immigration papers, had their fraud detected, yet were not prosecuted. Defendant now points to the cases of two Bosnian Muslims (Handanovic and Dzeko) extradited to face war crimes charges but not prosecuted for immigration fraud, and a third (Hajro) who falsely denied "foreign military service" yet was granted naturalization after a reviewing court found that he did not intentionally deceive.

---

allege – much less present any evidence – of errors in his case.

[10]In reply, defendant states: "This case has serious questions as to the preparation of and entry of information into the forms that do indicate serious questions as to the trustworthiness of the documents and their contents." However, he does not specify in what way the forms are untrustworthy.

11

Defendant presents no evidence that Handanovic or Dzeko lied to immigration officials or otherwise obtained naturalization by fraud; thus, they are not similarly situated, and the government's failure to prosecute them is reasonably explained. (See R. 116-5 at 22, noting that Handanovic disclosed military service.)[11] In Harjo's case, the reviewing court found, based on the specific facts of the case, that Harjo made a mistake in answering the question about military service and was not motivated by an intent to deceive. (R. 116-12 at 12-13.) In the present case, the government contends that defendant intentionally concealed his military service in order to gain admission. Whether the government can so prove is a matter for trial, but for present purposes defendant's situation is distinguishable from Harjo's.

## IX. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motions for pretrial notice of 404(b) evidence and early discovery concerning experts (R. 103, 104) are **DENIED** as moot

**IT IS FURTHER ORDERED** that defendant's motion to sever (R. 105) is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant's motion to reconsider the denial of his motion to suppress (R. 108), motion in limine regarding evidence of genocide (R. 109), motion in limine regarding foreign documents (R. 111), motion in limine regarding translated documents (R. 114), and motion to reconsider the denial of his selective prosecution motion (R. 116) are **DENIED**.

**FINALLY, IT IS ORDERED** that this case is scheduled for counsel-only **STATUS** on **Monday, July 15, 2013, at 11:30 a.m.** Attorney Dill may appear by phone. The court will

---

[11] In reply, defendant indicates that while Handanovic and Dzeko admitted their military service they failed to disclose their commission of murders or other atrocities. Defendant fails to present specific evidence of immigration fraud by these two individuals.

12

make the call.

Dated at Milwaukee, Wisconsin, this 3rd day of July, 2012.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge